IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BCMS PARTNERS, LP D/B/A RIOUX CAPITAL, | § § | |
| Plaintiff, | § | |
| V. | § | |
| | § | A-16-CV-241-LY-ML |
| KALAMATA CAPITAL, LLC, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the court are Defendant's Motion to Dismiss filed March 4, 2016 [Dkt. #4], Plaintiff BCMS Partners, LP d/b/a Rioux Capital's Response in Opposition to Defendant's Motion to Dismiss filed March 18, 2016 [Dkt. #5], Kalamata Capital, LLC's Reply Memorandum in Support of Defendant's Motion to dismiss filed March 24, 2016 [Dkt. #6], and Plaintiff BCMS Partners, LP d/b/a Rioux Capital's Surreply in Opposition to Defendant's Motion to Dismiss filed April 4, 2016 [Dkt. #12].

The Motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas on April 4, 2016 [Dkt. #13]. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

### A. Factual Background

On November 18, 2014, BCMS Partners, LP d/b/a Rioux Capital ("Rioux Capital") and Kalamata Capital, LLC ("Kalamata") entered into a Participation Agreement, according to which Kalamata agreed to pay up to $300,000 to Rioux Capital in exchange for a 10% interest in certain accounts receivable owned by Rioux Capital. Plaintiff's Verified Original Petition for Declaratory Judgment at ¶ 7 [Dkt. #1-1]. Kalamata did pay up to the $300,000 contribution. *Id*. at ¶ 9. On September 18, 2015, Kalamata gave sixty days written notice to Rioux Capital that it was terminating the Participation Agreement. *Id*. at ¶ 10. Per the sixty days notice, the Participation Agreement would terminate on November 18, 2015. *Id*. However, the parties dispute whether Kalamata is entitled to a refund of its entire $300,000 investment amount under the terms of the Participation Agreement. *Id*. at ¶ 13.

On November 16, 2015, Rioux Capital informed Kalamata that it believed Kalamata was not entitled to a refund of the entire amount. *Id*. at ¶ 11. On November 17, 2015, by letter, Kalamata informed Rioux Capital that it would immediately file suit for breach of the Participation Agreement if Rioux Capital did not refund the entire amount. *Id*. at ¶ 13.

Sometime on or before November 17, 2015, Rioux Capital contacted Kalamata and requested that "Kalamata forbear from exercising its rights, remedies and recourse against Rioux under the Participation Agreement." Dkt. #1-1 at Exh. D. By letter, Kalamata proposed to forbear from exercising its rights, remedies, and resources against Rioux Capital during the forbearance period. *Id*. The forbearance period was to begin on November 18, 2016 and terminate on the earlier of either a default by Rioux Capital or February 18, 2016. *Id*. Under Kalamata's proposal, Rioux Capital was to make monthly payments to Kalamata on December

10, 2015, January 10, 2016, and February 10, 2016. *Id*. Rioux Capital did not sign the letter agreeing to these terms. *Id.*

However, on December 3 and 4, 2015, the parties' attorneys exchanged email correspondence about a proposed standstill agreement ("First Standstill Agreement"). Dkt. #4-1. Rioux Capital offered to wire a certain sum of money to Kalamata "in exchange for a 30 day standstill with both sides preserving all rights and defenses." *Id*. Kalamata agreed to "standstill through December 31, 2015" if the payment was made by December 7, 2015. *Id*. Kalamata further threatened to file suit if the parties had not agreed on a repayment plan by December 31, 2015. *Id*.

On January 1 and 4, 2016, the parties' counsel exchanged subsequent emails ("Second Standstill Agreement"). Rioux Capital stated on that on December 30, 2016 it had wired a sum of money to Kalamata, and that "in exchange for the foregoing payment, Kalamata Capital shall agree to a second thirty day standstill where your client [Kalamata] agrees not to take any action to enforce its claims against Rioux Capital. . . . [T]he new standstill period wherein Kalamata Capital shall refrain from filing any litigation shall be through and including February 1, 2016." Dkt. #4-3. Kalamata confirmed it had received the payment and "that the standstill will remain in place through February 1, 2016." *Id*.

### B. Procedural Background

On January 26, 2016, Rioux Capital brought this declaratory judgment action in the 98th Judicial District of Travis County (the "Texas Action"). Rioux Capital seeks a declaration that it is not in breach of the Participation Agreement and is not obligated to repay Kalamata $300,000 under the Participation Agreement. Dkt. #1-1 at 5.

3

On January 27, 2016, Kalamata sued Rioux Capital in the District of Maryland for breach of the Participation Agreement but dismissed the case the next day. *See* District of Maryland, Case 8:16-cv-247. Kalamata explains that this "complaint was mistakenly filed prior to the expiration of the standstill period due to a miscommunication, and as soon as the miscommunication was detected, Kalamata dismissed that complaint, without prejudice." Reply Br. at 2 n.2 [Dkt. #6].

On February 24, 2016, Kalamata again sued Rioux Capital again in the District of Maryland (the "Maryland Action") for breach of the Participation Agreement. *See* District of Maryland, Case 8:16-cv-532. On May 2, 2016, Rioux Capital informed the Maryland court that it intended to move to stay that litigation in favor of the Texas Action and move to dismiss for lack of personal jurisdiction. Dkt. #8 in 8:16-cv-532. The Maryland court issued a briefing schedule for the motion to stay and stated any deadline for Rioux Capital's motion to dismiss for lack of personal jurisdiction will be extended until the court decides the motion to stay. Dkt. #14 in 8:16-cv-532.

Kalamata removed this action under diversity jurisdiction on February 26, 2016. *See* 28 U.S.C § 1332. Rioux Capital is a Texas resident, and Kalamata is a resident of Maryland and New York. Notice of Removal at 2 [Dkt. #1]. The parties are completely diverse, and the amount in controversy exceeds $75,000. *See* 28 U.S.C § 1332.

Kalamata now moves to dismiss the first-filed Texas action as an improper anticipatory declaratory judgment action in favor of the second-filed Maryland action brought by Kalamata.

## II.  APPLICABLE LAW

When competing suits are filed in federal courts, the court in which an action is first filed usually determines whether subsequent actions should proceed. *Cadle Co. v. Whataburger of*

*Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Save Power Ltd. v. Syntak Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co.*, 174 F.3d at 603. However, the first-to-file rule is a discretionary doctrine. *Id.* at 603.

The Declaratory Judgment Act is an enabling act, which confers discretion on courts in deciding whether to declare the rights of litigants, rather than an absolute right of litigants. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 389 (5th Cir. 2003) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-287 (1995)). "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Id.* (quoting *Wilton*, 515 U.S. at 289).

In analyzing whether to decide or dismiss a declaratory judgment suit, a federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Id.* at 387. Under the third prong of this analysis, courts examine seven nonexclusive factors in deciding whether to dismiss a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* at 388; *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). These *Trejo* factors address the three considerations a district court must weigh in determining whether to entertain a declaratory judgment action. *Sherwin-Williams*, 343 F.3d at 391. The first *Trejo* factor addresses issues of comity and efficiency. *Id*. The second, third, and fourth factors "analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Id*. As declaratory judgments are often "anticipatory" and more than one venue may be proper and thus require some forum selection, "these *Trejo* labels cannot be literally applied." *Id.* at 391-92. The fifth and sixth factors primarily address efficiency considerations. *Id*. at 392. The seventh factor implicates federalism and comity concerns. *Id*.

### III. ANALYSIS

In its opening brief, Kalamata primarily argues that the court should decline to hear this declaratory judgment because Rioux Capital, in bad faith and through the Standstill Agreements, induced Kalamata into deferring its own threatened lawsuit. Rioux Capital disagrees with Kalamata's assessment of the Standstill Agreements and argues that the court should apply the *Trejo* factors in deciding whether to keep or dismiss the case. Kalamata responds that Rioux Capital's conduct warrants dismissal without analysis of the *Trejo* factors, but even under the *Trejo* factors the case should be dismissed. While both sides address the *Trejo* factors, the parties' primary dispute is whether Rioux Capital improperly induced Kalamata to defer bringing its own suit so that Rioux Capital could file suit first. As this issue is considered under the

6

second *Trejo* factor, the undersigned will apply the *Sherwin-Williams* and *Trejo* analysis to determine whether to recommend that the District Court the keep the suit.

### A. Justiciability and Authority

Neither party disputes that a justiciable controversy exists. Kalamata has terminated the Participation Agreement, and the parties dispute whether Kalamata is entitled to a refund of its contribution. Kalamata previously threatened suit and has in fact brought suit in another district. Dkt. #1-1 at Exh. D; District of Maryland, Case 8:16-cv-532. "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). The parties' contract interpretation dispute as to whether Kalamata is entitled to a refund is justiciable. The court has the authority to interpret the contract and resolve this dispute.

### B. Discretion

#### 1. *Pending State Action*

There is no per se rule that a court must hear a declaratory judgment action when there is no related pending state court suit. *Sherwin-Williams*, 343 F.3d at 394. However, "[t]he absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action." *Id*. As this matter raises no issues of comity and efficiency between state and federal courts, this factor weighs against dismissal.

#### 2. *Suit Filed in Anticipation of Lawsuit*

Kalamata argues that this litigation should be dismissed because it was filed as an anticipatory declaratory judgment action. Kalamata contends that Rioux Capital used the Standstill Agreements to induce Kalamata to defer litigation so that Rioux Capital could file suit.

7

The parties dispute whether Rioux Capital's conduct concerning the Standstill Agreement constitutes bad faith such that the suit should be dismissed.

"The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin-Williams*, 343 F.3d at 397. However, filing a declaratory judgment in order to control the state law that will apply when the declaratory-judgment defendant is unable to file an affirmative suit is improper "procedural fencing." *Id.*; *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir.1983). Courts have also found impermissible "procedural fencing" when the declaratory judgment plaintiff brings the declaratory judgment action before the declaratory defendant is legally able to bring a state action. *Sherwin-Williams*, 343 F.3d at 397 n.7.

Kalamata contends that Rioux Capital induced it to defer filing its affirmative suit and Rioux Capital used that deferral to bring this suit. Kalamata cites several cases where courts dismissed the first-filed declaratory judgment in favor of the second-filed affirmative suit when the declaratory judgment plaintiff induced the other party in bad faith to wait to file suit. Rioux Capital argues that it did not act in bad faith because the Standstill Agreements were unilateral and only prevented Kalamata from filing suit. The Standstill Agreements, according to Rioux Capital, did not prevent Rioux Capital from bringing suit. Rioux Capital cites to no cases where a court found a unilateral agreement to defer suit rightfully permitted the other party to file its own suit.

Several courts have addressed similar factual situations and found the first-filed declaratory judgment action should be dismissed under the *Sherwin-Williams* or *Trejo* analysis. In *Chapa v. Mitchell*, A-05-CV-769-JN, 2005 WL 2978396 (W.D. Tex. Nov. 4, 2005), the court dismissed a first-filed declaratory judgment action where the declaratory judgment plaintiff took

advantage of the defendants' deferral of suit and filed a preemptive declaratory judgment action. The second-filed affirmative action also included a necessary party that was not included in the declaratory judgment action. *Id*. at *2. In *Chapa*, when threatened with a suit by the defendants, the declaratory-judgment plaintiff expressed his desire to settle and asked the defendants on several occasions to defer their suit so the plaintiff could consider the terms of the settlement. *Id*. Relying on the plaintiff's expressed willingness to settle, the defendants deferred their suit, and plaintiff filed a preemptive declaratory judgment action. *Id*.

In *Mill Creek Press, Inc. v. The Thomas Kinkade Company*, 3:04-cv-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004), the court dismissed a first-filed declaratory judgment action that was filed during settlement negotiations. The court reasoned that case law suggested a general policy that the aggrieved party should have the privilege of determining where to enforce its rights and allowing the first-filed declaratory judgment action to go forward would "penalize [the declaratory-judgment defendant] for its attempt to make a good faith effort to resolve this dispute out of court." *Id.* at *7, *9.

In *Capco International, Inc. v. Haas Outdoors, Inc.*, No. Civ. A. 3:03-cv-2127G, 2004 WL 792671 (N.D. Tex. April 9, 2004), the court dismissed a first-filed declaratory judgment action where the plaintiff filed a declaratory judgment after being alerted to potential infringement and during the course of settlement discussions. In *Capco*, the second filed suit was more exhaustive than the declaratory judgment action because it included additional claims. "'[W]hen both federal actions involve the same issues and parties, the better alternative is to allow the broader relief action to processed, since it certainly would address the relief sought, rather than the restricted declaratory judgment action.'" *Id.* at *5 (quoting 10 FED. PROC. § 23:10).

9

Several other cases have found the declaratory judgment action should be dismissed as anticipatory without applying *Sherwin-Williams* or *Trejo*.[1] In *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983), the Fifth Circuit affirmed the district court's dismissal of a declaratory judgment action as an anticipatory filing. In *Gemmy Industries Corp. v. Blue Ridge Designs, Inc.*, 3:99-cv-0008, 1999 WL 58785 (N.D. Tex. Feb. 1, 1999), the court also dismissed a first-filed declaratory judgment action. In response to the declaratory judgment defendant's letter informing the plaintiff of its infringement and threatening suit, the plaintiff requested more information and five days later filed the declaratory judgment action. The court dismissed the declaratory judgment action, finding it was a "preemptive strike." *Id*. at *2. In *Serco Services Co. v. Kelley Co.*, 3:93-cv-1885-R, 1994 WL 715913 (N.D. Tex. May 24, 1994), a dispute arose between Serco and Kelley about the validity and infringement of Kelley's patent. Kelley sent Serco a first letter alerting Serco to the alleged infringement. Serco responded that it believed it was not infringing. About eight months later, Kelley sent Serco a second letter, giving Serco a deadline to cease and desist its infringement or "Kelley would commence a law suit to enjoin further infringement." *Id.* at *1. Serco filed the declaratory judgment action at issue one business day before the deadline. *Id.* The court dismissed the first-filed declaratory judgment action finding that "the filing of an anticipatory suit trumps the 'first-filed' rule." *Id.* In *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990), the court dismissed the first-filed declaratory judgment action, stating "[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involve the same issues in a different forum."

---

[1] All four of these cases predate *Sherwin-Williams*, and only *Gemmy Industries* was issued after the *Trejo* decision. The court weighs them accordingly.

Rioux Capital argues it did not act in bad faith because the Standstill Agreements were unilateral and Rioux Capital did not agree to forego its right to sue during the standstill periods. Rioux Capital distinguishes *Chapa* arguing that in *Chapa* the declaratory judgment plaintiff induced the defendant to delay filing suit, while the plaintiff was preparing its own suit. Surreply Br. at 2 [Dkt. # 12]. Rioux Capital argues it only filed suit at the end of the second standstill period "when it became evident that settlement negotiations had failed and Kalamata intended to file suit in Maryland." *Id*. Rioux Capital further argues its good faith payments in exchange for Kalamata's deferment of suit and its good faith negotiations before filing suit distinguish the situation here from that in *Chapa*.

Importantly, Rioux Capital admits it filed its suit preemptively to deprive Kalamata of its chosen forum. *Id*. Moreover, not all of the cases discussed above involve a declaratory judgment plaintiff that induced the defendant to defer suit while the plaintiff prepared its own suit. In some of the cases, the defendant, of its own accord, had informed the plaintiff that it intended to file suit by a certain date if the parties could not resolve their disputes. *See Capco Int'l*, 2004 WL 792671; *909 Corp.*, 741 F. Supp. at 1290; *Serco Services*, 1994 WL 715913.

Given that Rioux Capital admittedly filed suit preemptively to avoid being sued in Maryland and because of the strong policy reasons to encourage parties to resolve their disputes without litigation, the court finds this factor strongly weighs against retaining jurisdiction of this case.

### 3. *Forum Shopping*

Filing of a declaratory judgment action, or any action, always involves forum selection to some extent. But "'without more, we cannot say that [the declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory

11

judgment statute and diversity jurisdiction.'" *Sherwin-Williams*, 343 F.3d at 398 (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). A court is more likely to find a plaintiff engaged in impermissible forum shopping where the federal action would change the applicable law. *Id.* at 397, 399; *Mission Ins.*, 706 F.2d at 602 n.3.

Rioux Capital argues that regardless of whether the Texas action or Maryland action goes forward, Texas law will control under the terms of the Participation Agreement. Rioux Capital's Resp. Br. at 13 [Dkt. #5]. However, while the Participation Agreement defines "Chosen State" as "Texas," the Participation Agreement does not elsewhere use the term "Chosen State" or include a venue or choice of law provision. Participation Agreement at ¶ 1.5 [Dkt. #1-1]. Accordingly, the Participation Agreement, on its face, does not contain an express choice of law provision.

Texas follows the Restatement (Second) of Conflict of Laws in determining which law to apply when interpreting a contract. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016). When the parties did not agree to a choice of law provision, Restatement § 188 provides for application of the "law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Id*. Under Section 6, courts should consider (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. Additionally, Section 188 directs particular attention to (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the

12

location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* (citing Restatement (Second) of Conflict of Laws § 188 (1971)).

In contrast to the many factors Texas's choice of law analysis weighs, Maryland law focuses on only one of these considerations. "Maryland generally follows the '*lex loci contractus*' principle, under which 'the law of the jurisdiction where the contract was made controls its validity and construction.'" *Noohi v. Toll Bros.*, 708 F.3d 599, 607 (4th Cir. 2013). "The place where the contract is made is the place where the last act is performed which makes the agreement a binding contract." *E. Stainless Corp. v. Am. Prot. Ins. Co.*, 829 F. Supp. 797, 799 (D. Md. 1993) (citations omitted).

Based on the record before it, this court is unable to determine "where the last act [was] performed which makes the [Participation Agreement] a binding contract" and therefore what law would apply under Maryland choice of law principles. *See id*. Additionally, neither party clarifies this issue for the court. Rioux Capital argues Texas law applies under the terms of the Participation Agreement. Resp. Br. at 6-9 [Dkt. #5]. Kalamata does not concede this point, but argues that Maryland courts are fully capable of applying Texas law. Kalamata Reply Br. at 7 [Dkt. #6].

Although Kalamata has not contended that Rioux Capital is attempting to change the applicable law by filing suit in Texas or that Kalamata would be prejudiced if Texas's choice of law rules were applied, the undersigned nonetheless finds it likely that the choice of law that will be applied to the Participation Agreement may be affected by the forum in which the case proceeds.

*4.	Possible Inequities*

This factor again raises the issue of whether Rioux Capital improperly brought suit first after inducing Kalamata to defer litigation. As stated above, after inducing Kalamata to defer suit while the parties attempted to reach an out of court resolution, it would be inequitable to allow Rioux Capital's preemptory suit to proceed.

*5.	Convenience of Forum*

Kalamata argues that Texas is not a convenient forum for it or its witnesses. Rioux Capital argues that Texas will be a more convenient forum because it, its witness, and its documents are located here. Either forum appears equally inconvenient for one party. Accordingly, this factor does not favor exercising jurisdiction over the matter. *See Capco Int'l*, 2004 WL 792671 at *5 (finding one forum more convenient for one party and the alternative more convenient for the opposite party and holding this factor weighed against retaining the declaratory judgment action); *Mill Creek Press*, 2004 WL 2607987 at *9 (finding this factor weighed against exercising discretion to hear the declaratory judgment action where the forums were respectively inconvenient for each of the parties).

*6.	Judicial Economy*

Rioux Capital argues judicial economy favors the Texas Action because its witnesses and evidence are here, and this District Court will be able to more efficiently apply Texas law. Kalamata contends this factor is neutral.

This factor is neutral. As this case does not appear to present any issues implicating sensitive forum-state policies, either court is equally capable of applying any state's forum law to

interpret the Participation Agreement. Moreover, both actions present the same issues between the same parties; one suit is not an attempt to resolve additional disputes between the parties.[2]

   7.   *State Judicial Decree*

Neither the Texas nor the Maryland actions will implicate state judicial decrees. This factor is neutral.

   **C. Conclusion**

Weighing the considerations given in *Sherwin-Williams* and *Trejo*, the undersigned finds the second, third, and fourth Trejo factors, which address fairness considerations, strongly weigh against maintaining the declaratory judgment action. The fifth factor—the parties' convenience—also slightly weighs against maintaining this action. Only the first factor—the lack of pending state action—favors retaining the suit. The remaining factors are either not implicated or are neutral. As no factors overcome the strength with which the fairness considerations counsel dismissing this case, the undersigned finds this case should be dismissed in favor of the Maryland action. Kalamata's attempts to resolve this dispute without the need for court intervention should not be penalized by allowing Rioux Capital's declaratory judgment to go forward.

**IV.   RECOMMENDATIONS**

For the reasons given above, the undersigned **RECOMMENDS** that the District Court **GRANT** Kalamata's Motion to Dismiss [Dkt. #4] and **DISMISS** this action without prejudice in favor of the Maryland action.

---

[2] Although Rioux Capital has indicated that it intends to move to dismiss the Maryland Action for lack of personal jurisdiction, it has not done so yet. Accordingly, the court gives that possibility, along with the possibility that the motion would be granted, little to no weight. Moreover, it seems inequitable to deprive an aggrieved party its choice of forum because an anticipatory declaratory judgment plaintiff has merely stated an intention to move to dismiss.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED June 22, 2016

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE